IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **JESSICA GARCIA SHAFER and DONA KIM MURPHEY,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. _____** |
| **PEARLAND INDEPENDENT SCHOOL DISTRICT, and LANCE BOTKIN, CRYSTAL CARBONE, TONI CARTER, AMANDA KUHN, SEAN MURPHY, KRISTOFER SCHOEFFLER, and NANETTE WEIMER, in their official capacities,** | § § § § § § § § | |
| **Defendants.** | § § | |

**COMPLAINT FOR DECLARATORY AND
PERMANENT INJUNCTIVE RELIEF CONCERNING
<u>VIOLATIONS OF SECTION 2 OF THE VOTING RIGHTS ACT</u>**

**BREWER STOREFRONT, PLLC**

By: <u>*/s/ William A. Brewer III*</u>
    William A. Brewer III
    Attorney-in-Charge
    State Bar No. 02967035
    Southern District of Texas Bar No. 929835
    <u>wab@brewerattorneys.com</u>
    Blaine E. Adams
    (*Pro hac vice forthcoming*)
    <u>bea@brewerattorneys.com</u>
    1717 Main Street, Suite 5900
    Dallas, Texas 75201
    Telephone: (214) 653-4000
    Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFFS**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................1

II. JURISDICTION AND VENUE................................................................................3

III. PARTIES ...............................................................................................................4

    A.    Plaintiffs.............................................................................................4

    B.    Defendants .........................................................................................6

IV. FACTS....................................................................................................................7

    A.    The Pearland Independent School District. ......................................7

    B.    PISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process. ..............................................8

    C.    The Electoral History: A Troubling Pattern for Minority Candidates ...................8

    D.    White Trustees Do Not Represent A Significant Portion of This Diverse Multiethnic, Multiracial, And Multilingual Community. ......................................9

    E.    PISD's All-White Board Fails Non-White Children. ............................................10

    F.    The Discriminatory Effects Of PISD's Electoral System Upon Minority Voters: Racist Incidents in PISD are a Problem. ...................................................10

    G.    Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place .........................................................................................13

V. CLAIMS...................................................................................................................15

    A.    Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act ...........................................................................................................15

    B.    Count 2: Violation Of The Fourteenth And Fifteenth Amendments Of The Constitution..........................................................................................................16

    C.    Count 3:  Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution ...............................16

    D.    Count 4:  Request For Attorneys' Fees ..............................................................17

VI. REQUEST FOR RELIEF ......................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Branch v. Smith,*
    538 U.S. 254 (2003) ...................................................................................14

*Zimmer v. McKeithen,*
    485 F.2d 1297 (5th Cir. 1973) ...................................................................13

**Statutes**

28 U.S.C. § 1331 .............................................................................................3

28 U.S.C. § 1343(a)(3) ....................................................................................3

28 U.S.C. § 1343(a)(4) ....................................................................................3

28 U.S.C. § 1391(b)(1) ....................................................................................3

42 U.S.C. § 1988(b) .......................................................................................17

Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 ........................2

Tex. Educ. Code Ann. § 11.054 (b)-(c) ........................................................14

Voting Rights Act ..............................................................................14, 16, 17

Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e) ..................................17

Voting Rights Act Section 2 ...........................................................1, 14, 15, 16

**Other Authorities**

United States Constitution Fourteenth and Fifteenth Amendments .......................2, 14, 16, 17, 18

Plaintiffs Jessica Garcia Shafer and Dona Kim Murphey file this Complaint for Declaratory and Permanent Injunctive Relief Concerning Violations of Section 2 of the Voting Rights Act ("Complaint") against defendants Pearland Independent School District ("PISD" or the "District"), and Lance Botkin, Crystal Carbone, Toni Carter, Amanda Kuhn, Sean Murphy, Kristofer Schoeffler, and Nanette Weimer in their official capacities as members of the PISD Board of Trustees (each individually, a "Trustee" and collectively, the "Board" or "Defendants"), on personal knowledge as to the facts concerning themselves and on information and belief as to all others as follows:

# I.

## PRELIMINARY STATEMENT

1.     Those elected to school boards responsible for the oversight and management of public-school systems, hold important positions because they directly influence the education of future generations. Therefore, it is crucial that all citizens of voting age have a fair opportunity to participate in electing these officials to ensure that they represent an increasingly diverse population of students and community interests. When the electoral process pursuant to which trustees are chosen "stacks the deck" against people of color——such bodies cease to be "representative."  Unfortunately, PISD employs an electoral system which illegally dilutes the votes of people of color.

2.     PISD is racially and ethnically diverse. Students of color form nearly 67% of the total student body, according to the Texas Education Agency ("TEA") 2020-21 Texas Academic Performance Reports (TAPR). That year, about 33% of all PISD students were white, 36.8% Hispanic, 11.1% Asian, 14.9% African American, and 3.9% two or more races.

3.     Despite the district's rich diversity, the at-large system employed by the District for electing the seven-member PISD Board of Trustees effectively denies political opportunity for

1

African Americans, Hispanics, Asians and other people of color – including Ms. Shafer, who is Hispanic, and Ms. Murphey, who is Asian.  Though 67% of students in PISD are minorities, 100% of the school district's trustees are white. Since 2018, all 11 minority candidates who ran for the board (one of whom ran as an incumbent board president) lost their elections. The most recent school board elections, which occurred in May 2022, resulted in three minority candidates losing to white candidates. These results illustrate the flaw in at-large election systems: they allow a bloc of voters—here white—to defeat the preferred candidates of minority voters and effectively silencing those minority voices. At-large voting systems enable slight voting majorities to completely dominate the electoral process, and large minority communities are ignored at the ballot box, and, predictably, in the classroom.

4.      In PISD, the Board oversees an approximately $195 million general fund expenditures budget – which is spent in ways that, also predictably, fails the non-white student population. In 2020-21, 48% of African American students and 50% of Hispanic students were at grade level, compared to 71% of white students – an achievement gap of more than 20 points.

5.      Ms. Shafer and Ms. Murphey bring this Complaint because the at-large election system employed in this District denies equal voting opportunity to voters of color and many of the parents of children enrolled in PISD schools, and thereby denies these residents the opportunity to elect candidates of their choosing to represent their communities. Accordingly, Ms. Shafer and Ms. Murphey seek judicial relief for violations of Section 2 the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "Voting Rights Act") and the Fourteenth and Fifteenth Amendments of the United States Constitution, U.S. Const. amend. XIV and XV ("Constitution").

6.      Specifically, Ms. Shafer and Ms. Murphey request that the Court issue a permanent injunction prohibiting PISD, its Trustees, agents, and all persons acting in concert with any of

them, from administering, implementing, or conducting any future elections for the Board under an at-large electoral system, and a judgment declaring the current at-large system in PISD violates federal law. This relief will ensure that Ms. Shafer's and Ms. Murphey's voices and the voices of the community are heard and factored into the decisions affecting the fate of PISD's children.

## II.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to:  (i) 28 U.S.C. § 1331, which grants United States district courts original jurisdiction over any civil action "arising under the . . . laws . . . of the United States[;]" (ii) 28 U.S.C. § 1343(a)(3), which grants district courts original jurisdiction over any civil action to redress a deprivation of any right secured by a law of the United States "providing for the equal rights of citizens or of all persons within the jurisdiction of the United States;" and (iii) 28 U.S.C. § 1343(a)(4), which grants district courts original jurisdiction over any civil action under "any Act of Congress providing for the protection of civil rights, including the right to vote."

8.     This Court has personal jurisdiction over PISD because the District is located primarily in Brazoria, Texas, with a smaller portion in Harris County. This Court also has personal jurisdiction over the Board of Trustees because the seven Trustees reside in Brazoria County, within the Southern District.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Texas and all are residents of the Southern District.

# III.

# PARTIES

**A.    Plaintiffs**

10.    Ms. Shafer is a United States citizen and registered voter who resides within the boundaries of PISD. Ms. Shafer, who is Hispanic, is also an active member of her community. Ms. Shafer holds a deep and committed interest in the success and equality of PISD schools. She is a volunteer, former board candidate, and champion for children. Her daughter is a student at Challenger Elementary School.

11.    Ms. Shafer is an advocate for the interests of minority and low-income students in PISD. In 2020, she ran for Position 2 on the PISD Board of Trustees and in 2021 she ran for Position 4. In her campaign literature she stated, "As an epidemiologist with an interest in and experience with infectious diseases I am uniquely poised to help the district manage our continued response to COVID-19." She also expressed concern about charges of racism in the district, levied by students and parents: "we, as a community, need to put in the work to create a better world for our kids."

12.    It is important to Ms. Shafer that the District take into consideration the needs and concerns of minority students and parents in PISD and address the student achievement gap in PISD as well as the disparate disciplinary treatment of minority children.

13.    Ms. Shafer's experiences as a mother of a PISD student motivated her to run for the PISD school board. She believes her insights as a mother, community volunteer, and epidemiologist could offer a valuable perspective to the PISD board.

14.    Ms. Shafer knows that the at-large system leaves the needs and concerns of the vast majority of PISD schoolchildren unaddressed.  The current electoral process denies Ms. Shafer and her friends, neighbors and fellow parents—African Americans, Hispanics, Asians, and other

4

minorities – an equal opportunity to elect representatives of their choice. Ms. Shafer experienced this obstacle firsthand when she ran for Position 2 on the PISD Board of Trustees in the November 3, 2020 election and again when she ran for Position 4 in the May 1, 2021 election. Ms. Shafer was a qualified and viable candidate for the PISD board yet, in November 2020, she lost a five-candidate election by 113 votes. Both times she ran, Ms. Shafer was defeated by a white candidate who benefited from the at-large voting system that operates to disenfranchise and disadvantage minority communities.

15.     Ms. Murphey is a United States citizen and registered voter who resides within the boundaries of PISD. Ms. Murphey, who is Korean American (Asian), is also an active member of her community.

16.     Ms. Murphey is deeply invested in the success of PISD and has two children who attended PISD since kindergarten: one a junior and one a senior at Dawson High School.

17.     Ms. Murphey ran for Position 5 on the PISD Board of Trustees in the May 4, 2019 election, but lost to a white candidate, Rebecca Decker. Ms. Murphey was a highly qualified candidate for the board and is a neurologist who earned her MD PhD in neuroscience from Baylor College of Medicine in 2010.

18.     Ms. Murphey believes the current PISD school board does not reflect the diverse composition of the community.  Therefore, she supports the creation of single-member districts to improve representation on the board. On her trustee campaign website, Ms. Murphey stated, "While we must address the continued growth in the number of students, we must also meet the needs of an increasingly diverse community." She added that, "This is best achieved when the Board represents the backgrounds and challenges of all Pearland students and families and carefully weighs the input of all stakeholders in PISD."

19.     Ms. Murphey strongly believes that PISD needs to do away with its at-large election system. She listed educational equity and representation as priorities on her campaign website and pointed out that the at-large nature of the school board "reinforces a lack of representation among school board trustees" in the diverse district. She wrote that single-member districts for school board positions will "ensure we capture the demographic changes in PISD in representation."

20.     Ms. Murphey has repeatedly raised concerns about the treatment of minority students in PISD. In May 2019, the Houston Chronicle reported that she called for a cultural sensitivity program in PISD and transparency regarding data about demographics relating to punishment and enrollment in academic programs. Murphey wrote, "In the absence of meaningful conversations about race and religion, we will not be able to address adequately the underlying issues that motivate the discriminatory dress code policy and enforcement in this district."

21.     Since running for office in 2019, Ms. Murphey has actively recruited and supported candidates of Asian, Hispanic, and Black backgrounds for the PISD board.

22.     Ms. Shafer and Ms. Murphey believe that a change from the current at-large voting system will empower people of color to successfully run for Trustee positions, inspire greater electoral participation, and lead to a more equitable system of representation.

**B.     Defendants**

23.     PISD is an Independent School District located largely in Brazoria County, but also in Harris County, and created pursuant to Texas law.  PISD may be served with process through its Superintendent, Larry Berger, at 1928 N. Main Street, Pearland, Texas 77581.

24.     Toni Carter is a Trustee elected to Position 1 of the Board and resides within PISD. She may be served with process at 4115 Flamingo Court, Pearland, TX, 77584.

25.     Kristofer Schoeffler is a Trustee elected to Position 2 of the Board and resides within PISD.  He may be served with process at 2126 Roy Road, Pearland, TX, 77581.

26.     Crystal Carbone is a Trustee elected to Position 3 of the Board and resides within PISD.  She may be served with process at 1607 W. Pine Branch Drive, Pearland, TX, 77581.

27.     Sean Murphy is a Trustee elected to Position 4 of the Board, is the President of the Board, and resides within PISD.  He may be served with process at 2907 Queen Victoria Street, Pearland, TX, 77581.

28.     Amanda Kuhn is a Trustee elected to Position 5 of the Board, is the Secretary of the Board, and resides within PISD.  She may be served with process at 2303 Fairway Circle, Pearland, TX, 77581.

29.     Lance Botkin is a Trustee elected to Position 6 of the Board and resides within PISD.  He may be served with process at 3701 Pine Forest Place, Pearland, TX, 77581.

30.     Nanette Weimer is a Trustee elected to Position 7 of the Board, is the Vice President of the Board, and resides within PISD. He may be served with process at 3513 E Plum Street, Pearland, TX, 77581.

**IV.**

**FACTS**

**A.     The Pearland Independent School District.**

31.     Founded in 1893, PISD is primarily located in Brazoria County, Texas, with a small portion in Harris County, Texas. PISD has an enrollment of more than 21,000 students across 23 campuses.

32.     Like many suburban school districts in Texas, PISD has experienced significant demographic changes in recent years.  In the 2003-04 school year, the racial composition of the PISD student body was about 56.5% white, and only 18.4% of students came from economically disadvantaged backgrounds.  As of the 2020-21 school year, students of color comprised 66.7% of the PISD student body. According to the Texas Education Agency ("TEA"), in 2020-21, the

7

students enrolled in PISD are 33% white, 36.8% Hispanic, 11.1% Asian, 14.9% African American, 3.9% Two or More Races, 0.2% American Indian, and 0.1% Pacific Islander. Additionally, 31.5% of PISD's students are classified as economically disadvantaged and about 9.7% are English Learners. An economically disadvantaged student is defined by the TEA as a student who is eligible for free or reduced-price lunch or eligible for other public assistance. English Learners are students whose primary language is other than English.

**B.    PISD's Current At-Large Election System Discourages Minority Participation In The Electoral Process.**

33.    Under the current at-large election system, all voters within PISD vote for the candidates for every board seat. Trustees serve staggered three-year terms in "positions" which have no geographic significance. In other words, elected trustees do not represent any specific territory or neighborhood within PISD.  The result is a small majority of whites who vote as a bloc are able to control elections thereby minimizing the opportunities for non-whites at the ballot box. In practice the at-large system discourages minority or minority-preferred candidates from seeking office because it effectively functions as a white-controlled referendum on all candidates. In PISD, a bloc of white voters controls all seven Trustee positions.

**C.    The Electoral History: A Troubling Pattern of Defeats for Minority Candidates.**

34.    PISD's at-large voting system prevents minority-preferred candidates from winning elections. Minority candidates are *repeatedly* defeated by a white voting bloc that rejects minority candidates and elects white candidates. The at-large system enables racially polarized voting within PISD to dilute minority votes and allow white voters to block minority candidates from trustee seats.

35.    Despite the inherent difficulty facing any minority candidate, PISD has an established history of minority candidates running for the school board and losing to white

candidates. Since just 2018, 11 minority candidates have run for the board and lost. The candidates who ran and lost were Daniel Hernandez in Position 4 in 2018, a Hispanic candidate; Al Lloyd in Position 3 in 2018, an African American candidate; Al Lloyd again in Position 7 in 2019; Joseph Say in Position 6 in 2019, a Hispanic/Asian candidate; Dona Kim Murphey in Position 5 in 2019, an Asian candidate; Jessica Garcia Shafer in Position 2 in 2020, a Hispanic candidate; Edgar Pacheco, Jr., in Position 2 in 2020, a Hispanic candidate; Charles Gooden, Jr., in Position 1 in 2020, an incumbent African American candidate; Jessica Garcia Shafer again in Position 4 in 2021; Tobi Adeyinka in Position 3 in 2021, an African American candidate; David Nguyen in Position 6 in 2022, an Asian candidate; Jin Yoon in Position 5 in 2022, an Asian candidate; and Trent Perez in Position 7 in 2022, a Hispanic candidate. Ellen Kuo, a candidate who is white but has an Asian surname, also ran for Position 7 in 2022 and lost.

36.     The consequence—an all-white board that sets District policy without the input of those communities from which most students reside. The chilling effects of the at-large system empowers the current Board, which fails to reflect the composition of the real stakeholders in the public-school system.

**D.     White Trustees Do Not Represent The Needs of This Multiethnic, Multiracial, And Multilingual Community.**

37.     The PISD Board is responsible for overseeing and managing a school district with 23 campuses, an annual budget of nearly $259 million, and more than 21,000 students. Although the composition of the PISD student body has significantly diversified in recent decades, the makeup of the Board remains entirely white and disconnected from the diverse multiethnic, multiracial, and multilingual community comprising the school district. In fact, the current composition of the PISD Board is geographically, racially, and socially representative of only a

narrow slice of PISD's community. The majority of PISD students are not white, yet that majority remains unrepresented by the at-large voting system currently utilized in PISD.

**E.      Predictably, PISD's All-White Board Fails Non-White Children.**

38.     As PISD grapples with the dramatic changes in its student demographics, it also faces pressing issues of poverty and inequality of educational resources among students enrolled in certain PISD schools. The PISD Board is responsible for ensuring that the District's resources are applied equitably to serve the interests of every child within its boundaries. The district is required to allocate resources in a manner that benefits all children equally regardless of the neighborhoods in which students reside. Unfortunately, the PISD Board's fiscal and policy decisions contribute to an unacceptable performance gaps between white students attending favored schools and everyone else.

39.     This egregious situation persists through every level of the PISD student experience. Although 71% of white students met grade level across all subjects and grades tested in 2021, only 50% of Hispanic students, 48% of African American students, 42% of economically disadvantaged students, and 28% of English Learners met grade level.  The story of PISD is, then, a tale of two school districts: minority and economically disadvantaged students are left behind while their white counterparts are set up for success. Such disparity between schools in the same district is not inevitable; action must be taken to improve conditions throughout PISD.

**F.      The Discriminatory Effects Of PISD's Electoral System Upon Minority Voters: Racism in PISD is a Problem.**

40.     Overt racism in PISD abounds and has been extensively reported in local Houston media.

41.     In April 2019, the Houston Chronicle reported about an email that was circulating about three minority Board candidates which appeared designed to incite PISD voters with

Islamophobic and xenophobic beliefs.[1] The email targeted three minority PISD candidates: Dona Kim Murphey, who is Asian; Joseph Say, who is Hispanic and Asian; and Al Lloyd, who is African American. The message concluded by stating, "May Allah guide our candidates through victory in Pearland and off to bigger and better things!" It depicted a banner stating, "The Victory of Allah is near." The email was sent by the account pearlandislam@gmail.com and claimed to come from the Center for Pearland American Islamic Relations, a fictitious organization.  All three candidates lost their bids for the PISD school board. Candidate Joseph Say responded with a statement: "This inflammatory messaging is specifically designed to stoke confusion and sow racial and religious divisiveness. We believe that this fear-mongering is exactly the type of toxic environment that we need to eradicate from our district."

42. In May 2019, Fox 26 Houston reported that a Muslim student at Glenda Dawson High School was told that she would need a note from her religious leader in order to wear her hijab.[2]

43. In January 2020, the Houston Chronicle reported that a second student joined a federal lawsuit originally filed by Juelz Trice, an African American, in August 2019.[3] The students accused administrators at Berry Miller Junior High School of using a black permanent marker to color in designs in the students' haircuts in 2017. The administrators included Tony Barcelona,

---

[1] Jacob Carpenter, *Email About Pearland Candidates Targets Anti-Islam, Anti-Immigrant Voters*, Houston Chronicle (April 27, 2019), https://www.houstonchronicle.com/news/houston-texas/houston/article/Email-about-Pearland-candidates-targets-13799450.php.

[2] Natalie Hee, *Pearland ISD Student Told She Would Need a Note From a Religious Leader to Wear Hijab*: Parents, Fox 26 Houston (May 22, 2019), https://www.fox26houston.com/news/pearland-isd-student-told-she-would-need-a-note-from-a-religious-leader-to-wear-hijab-parents.

[3] Shelby Webb, *Second Pearland ISD Student Accuses Administrator of Coloring His Scalp With a Marker*, Houston Chronicle (January 24, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/Second-Pearland-ISD-student-accuses-administrator-15001523.php

recently named principal (even following the incidents). The students' attorney, Randall Kallinen, said Barcelona should have been demoted and not promoted: "Now we see this is not an isolated incident, and despite this repeated extremely shameful behavior and history of racial discrimination, the Pearland ISD decided Tony Barcelona should be the leader of the Berry Miller Junior High School." Kallinen claimed that this conduct is part of a pattern of discrimination by PISD against African American students.

44.     In January 2020, the Houston Chronicle also reported that according to Texas Education Agency (TEA) data, nearly one in seven black students in PISD was placed under in-school suspension in 2018-19, compared to one in 18 white students and one in 12 Hispanic students.

45.     In August 2020, Click 2 Houston reported that the NAACP of Brazoria County called on the PISD to give teacher Holly Hardwicke Kanipes, 57, diversity training and asked that she apologize for a Facebook post in which she wrote, "White slaves were treated worse than any other race in the U.S. When was the last time you heard an Irishman (expletive) how the world owes them a living? You won't."[4] NAACP of Brazoria County President Eugene Howard said that it was a "highly inappropriate" time to make the post and added that, "We have to stop marginalizing communities[.]"

46.     In October 2020, former school board candidate Joseph Say wrote an essay for Medium titled, "Pearland's Long History with Racism."[5] The post explained that while Pearland is now the second most diverse city in Texas, early advertisements to recruit residents touted it as

---

[4] Sofia Ojeda, *Pearland ISD Teacher Under Fire for 'White Slaves' Post*, Click 2 Houston (August 11, 2020), https://www.click2houston.com/news/local/2020/08/12/pearland-isd-teacher-under-fire-for-white-slaves-post/

[5] Joe Tse, *Pearland's Long History With Racism*, Medium (October 9, 2020), https://josephsay.medium.com/pearlands-long-history-with-racism-78416be651c8

the "Capital of Caucasia." He added that the "dog whistle" of "Don't Houston our Pearland" aims to keep the city white. Say added that "blatantly racist people" are able to hold office in Pearland because of at-large elections.

47.    The legacy of the PISD electoral system is one of blocking minority political participation and continuing an all-white school board that has failed students of color. Specific mechanisms contributing to this problem include: (1) at-large elections for all seven seats on the Board; (2) staggered election terms; and (3) a District-wide plurality vote requirement. There is no legitimate reason to continue along this path. The time is overdue for PISD to adopt a system that ensures that people of color have meaningful opportunity for full and fair participation in the electoral process.

## G.    Absent Judicial Intervention, The Current Discriminatory Electoral System Will Remain In Place.

48.    PISD's discriminatory voting system is a relic of the District's past and must be changed. Although "at-large . . . districting schemes are not per se unconstitutional . . . where the petitioner can demonstrate that 'its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice,' . . . such districting schemes are constitutionally infirm." *Zimmer v. McKeithen*, 485 F.2d 1297, 1304-05 (5th Cir. 1973) (internal citations omitted).

49.    Across the country and elsewhere in Texas, school districts with at-large election systems have recognized, either voluntarily or through judicial intervention, the representational flaws in their voting structure and have adopted alternative voting structures, such as a single-member district system or a cumulative voting system.

50.    Under single-member district elections, board seats are tethered to a specific geographic area within the school district. A single-member district system vests trustees with

responsibility for the interests of localized communities, ensuring that all parts of the District participate in the Board's decision-making process. In January 2019, Richardson ISD agreed to a settlement replacing the district's at-large election system with a new system consisting of five single-member districts and two at-large districts. Just three years later, the RISD school board is now majority minority, with two African American trustees and two Hispanic trustees - all women.

51.     Alternatively, included in the Texas Education Code, the cumulative voting structure enables each voter to cast a number of ballots equal to the number of positions to be filled at the election and voters may allocate their votes to one candidate or multiple candidates (Tex. Educ. Code Ann. § 11.054 (b)-(c)). Through this structure, the minority population is granted greater access to the electoral process and the possibility of vote dilution is diminished. Cumulative voting has the potential to promote trustees from the more disadvantaged and underrepresented communities within the district.

52.     Indeed, a "court could design an at-large election plan that awards seats on a cumulative basis, or by some other method that would result in a plan that satisfies the Voting Rights Act." *Branch v. Smith*, 538 U.S. 254, 310 (2003).

53.     The PISD electoral system violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution. Unless the Court directs PISD to design a single-member district structure or a cumulative voting system that does not unlawfully dilute the votes of African American, Hispanic, and Asian voters, the current discriminatory system will persist.

# V.

# CLAIMS

## A.    Count 1:  Declaratory Relief For Violations Of Section 2 Of The Voting Rights Act

54.    The allegations set forth in paragraphs 1-54 above are hereby incorporated as if fully set forth herein.

55.    Section 2 of the Voting Rights Act prohibits any standard, practice or procedure that results in the denial or abridgment of minority voting rights. Specifically, it forbids any electoral system that denies African Americans, Hispanics, Asians, and other minority groups an opportunity equal to that afforded to other members of the electorate to elect representatives of their choice.

56.    PISD's at-large electoral system for electing its Board unconstitutionally dilutes African American, Hispanic, and Asian voting strength and is not equally open to participation by PISD's non-white voters. As a result of the electoral system, African Americans, Hispanics, and Asians have less opportunity to meaningfully participate in the electoral process and to elect representatives of their choice.

57.    The African American, Hispanic, and Asian communities in PISD are sufficiently large, geographically compact, and constitute a politically unified group that votes cohesively as a bloc, such that one or more properly-apportioned single-member electoral districts can be drawn in which minorities would constitute a majority of eligible voters.

58.    PISD Board elections are characterized by racially polarized voting in which the predominately white voting bloc votes in a way that regularly defeats the African American, Hispanic, Asian, and non-white communities' candidates of choice, having a chilling and discouraging impact on minority voter participation. Thus, based on the totality of past and present

circumstances, the PISD electoral system impermissibly dilutes the minority vote and stymies that community's ability to participate fully in the election process.

59.     Accordingly, Ms. Shafer and Ms. Murphey request that the Court issue a declaratory judgment stating that the PISD electoral system violates Section 2 of the Voting Rights Act.

**B.     Count 2: Violation Of The Fourteenth And Fifteenth Amendments Of The Constitution**

60.     The allegations set forth in paragraphs 1-60 above are hereby incorporated as if fully set forth herein.

61.     PISD's at-large voting system deprives the African American, Hispanic, and Asian communities of equal protection of the law in violation of the Fourteenth and Fifteenth Amendments of the Constitution.

62.     The at-large system has been maintained for a discriminatory purpose and has the effect of diluting, minimizing, and canceling out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments to the Constitution.

**C.     Count 3: Injunctive Relief For Violations Of The Voting Rights Act And Fourteenth and Fifteenth Amendments Of The Constitution**

63.     The allegations set forth in paragraphs 1-63 above are hereby incorporated as if fully set forth herein.

64.     Unless enjoined, the PISD electoral system will remain in force and, therefore, PISD will continue to violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments of the Constitution by administering, implementing, and conducting future elections for Board members utilizing that unlawful system.

65.     Without the Court's intervention, the Board's actions and the electoral system will cause minority non-white voters irreparable harm because the electoral system denies those voters

16

the opportunity to fully participate in the electoral process by diluting the strength of their vote, for which there is no adequate remedy at law.

66.     Accordingly, Ms. Shafer and Ms. Murphey request that the Court enter a permanent injunction prohibiting Defendants from administering, implementing, and conducting future elections for the PISD Board based on the at-large electoral system. Such relief is authorized by the Voting Rights Act and principles of equity.

**D.     Count 4:  Request For Attorneys' Fees**

67.     The allegations set forth in paragraphs 1-67 above are hereby incorporated as if fully set forth herein.

68.     Because of PISD's unlawful electoral system, Ms. Shafer and Ms. Murphey have been required to retain the undersigned counsel to present and prosecute the claims asserted herein.

69.     This action is a suit to enforce the voting guarantees of the Voting Rights Act. Pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), Ms. Shafer and Ms. Murphey are entitled to recover their reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of their costs for pursuing this lawsuit.

**VI.**

**REQUEST FOR RELIEF**

In light of the foregoing, Ms. Shafer and Ms. Murphey respectfully request this Court enter judgment in their favor and against all Defendants, providing for the following relief:

(a)     a judicial declaration that the at-large method for electing members to the PISD Board violates Section 2 of the Voting Rights Act;

(b)     a permanent injunction prohibiting PISD, its Trustees, agents, and all persons acting in concert with any of them, from administering,

implementing, or conducting any future elections for the Board under an at-large electoral system;

(c)     an order directing PISD to devise an election plan and implementation schedule that remedies the violations of Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV.  If PISD fails to formulate such a plan, the Court should order into effect a new election plan of its own, designed to remedy the violations of Section 2 and U.S. Const. amend. XIV and XV, and order elections to be held pursuant to that plan as promptly as possible;

(d)     an order that all future elections for the PISD Board comply with Section 2 of the Voting Rights Act and U.S. Const. amend. XIV and XV;

(e)     an award of reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b), and any other applicable statute;

(f)     an award of costs of Court; and

(g)     any other relief, at law or in equity, to which Ms. Shafer and Ms. Murphey are entitled and this Court deems just and proper.

Dated: November 3, 2022                    Respectfully submitted,

                                           **BREWER STOREFRONT, PLLC**


                                           By:*/s/ William A. Brewer III*
                                               William A. Brewer III
                                               Attorney-in-Charge
                                               State Bar No. 02967035
                                               Southern District of Texas Bar No. 929835
                                               wab@brewerattorneys.com
                                               Blaine E. Adams
                                               (*Pro hac vice forthcoming*)
                                               bea@brewerattorneys.com
                                               1717 Main Street, Suite 5900
                                               Dallas, Texas 75201
                                               Telephone: (214) 653-4000
                                               Facsimile: (214) 653-1015

                                               **ATTORNEYS FOR PLAINTIFFS**