IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JESSICA GARCIA SHAFER and DONA KIM MURPHEY, *Plaintiffs*, | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:22-cv-00387 |
| PEARLAND INDEPENDENT SCHOOL DISTRICT, *Defendant.* | § § § § | |

**DEFENDANT PEARLAND INDEPENDENT SCHOOL DISTRICT'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Pearland Independent School District submits the following reply in support

of its motion for summary judgment:

## INTRODUCTION

Plaintiffs dedicate most of their response to fabricating alleged fact issues regarding

discriminatory intent. But their inadmissible and immaterial "evidence" ultimately does not

matter because their statutory and constitutional vote dilution claims all fail as a matter of law.

And while Plaintiffs invite the Court to delay the inevitable by allowing meaningless discovery,

they have not complied with Rule 56(d)'s most basic requirements. Summary judgment should

be granted.

## ARGUMENT AND AUTHORITIES

**I.     There is no constitutional or statutory basis for compelling Pearland ISD to
       adopt single-member districts for the benefit of a multi-race political coalition.**

Plaintiffs cannot legitimately dispute that their Section 2 coalition claims fail as a matter

of law under *Petteway v. Galveston County, Texas*, 111 F.4th 596 (5th Cir. 2024) (en banc). The

fact that *Petteway* involved a county and this case involves an independent school district is not material because the Fifth Circuit did not limit its Section 2 analysis to any particular type of governmental entity. *Id.* Additionally, in arguing that *Petteway* is distinguishable because "it involved a coalition of African American and Hispanic voters, whereas this case involves a coalition of Hispanic and Asian voters" [*see* Dkt. No. 76, p. 28], Plaintiffs demonstrate that even they are confused about the factual and legal bases for their claims (given that their complaint and expert reports rely on a coalition of African American, Hispanic, and Asian voters). Common sense suggests that the Fifth Circuit would not rely on Section 2's plain language to forcefully reject *two*-race political coalitions from bringing vote dilution claims, but allow *three*-race political coalitions (or two-race coalitions comprised of different races than those at issue in *Petteway*). *See Petteway*, 111 F.4th at 614 ("Section 2 does not require political subdivisions to draw precinct lines for the electoral benefit of distinct minority groups that share political preferences but lack the cementing force of race or ethnicity.").

Furthermore, although Plaintiffs argue that "*Petteway* expressly allowed Fourteenth and Fifteenth Amendment claims to proceed" [*see* Dkt. No. 76, pp. 28–29], the *Petteway* Court did *not* hold that coalition claims can be brought under the Fourteenth or Fifteenth Amendment. Instead, the Fifth Circuit specifically noted that a "[p]ertinent consideration on remand" is "whether Plaintiffs can prove that they have been injured, or are entitled to relief, when their claims are premised on a coalition theory."[1] *Petteway*, 111 F.4th at 614 n.13. Simply put, Plaintiffs have provided no statutory or constitutional authority that would allow the Court to

---

[1]As noted in the District's motion for summary judgment, the Court did not reach the plaintiffs' constitutional claims in *Petteway* due to the doctrine of constitutional avoidance. Accordingly, the Fifth Circuit did not render an opinion on the merits of such claims (and, if anything, appeared to cast doubt on their viability).

interfere in a local election by imposing judicially-created single-member districts for the electoral benefit "of distinct minority groups that share political preferences but lack the cementing force of race or ethnicity." This alone necessitates summary judgment.

## II. Plaintiffs invite the Court to engage in race-based districting that cannot withstand strict scrutiny.

Not only do Plaintiffs ask the Court to supplant the District's at-large election system through judicial fiat, they also seek judicial imposition of a districting plan aimed at benefitting a political coalition of African American, Hispanic, and Asian voters, without regard to traditional districting principles. Yet, Plaintiffs make no effort to demonstrate that their proposed race-based plan furthers a compelling governmental interest, or is narrowly tailored to achieve that interest. This is fatal to their claims. *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (race-based districting must survive strict scrutiny, even when implemented for remedial purposes); *see also Petteway*, 111 F.4th at 610–12 ("[C]oalition claims have significant practical consequences for both legislative bodies *and the judiciary* . . . How can their decisions avoid having considerations of race 'predominate' in legislative line-drawing?") (emphasis added).[2] "Acceptance of race-based state action is rare for a reason: '[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 208 (2023) (quoting *Rice v. Cayetano*, 528 U.S. 495, 517 (2000)); *see*

---

[2] Plaintiffs' failure to address this argument is not surprising given that (i) under *Petteway*, compliance with Section 2 of the Voting Rights Act can no longer be used as a compelling governmental interest in coalition cases; and (ii) the Texas Education Code itself provides alternative methods for conducting at-large elections, which could impact the outcome of trustee elections *without* forcing the creation of single-member districts. *See, e.g.,* TEX. EDUC. CODE § 11.054(a) ("The board of trustees of an independent school district that elects its trustees at large or at large by position by order that elections for trustees be held using the cumulative voting procedures described by this section.").

*also Petteway*, 111 F.4th at 612 "[B]y providing representation to a statutorily protected minority group despite its sub-majority numbers, coalition claims cross the line from protecting minorities against racial discrimination to the prohibited . . . goal of mandating proportional representation.") (citations and quotations omitted).

Plaintiffs concede that at-large systems of voting are not *per se* unconstitutional.  [Dkt. No. 76, pp. 11, 14].  And because they do not identify a compelling governmental interest that would be served by implementing race-based districting, or offer any evidence demonstrating that such a plan is the least restrictive approach to achieve some (unknown) compelling governmental interest, their claims fail as a matter of law and summary judgment should be granted.

## III.   Plaintiffs cannot prevail under the Fifteenth Amendment.

It remains undisputed that the United States Supreme Court has never recognized vote dilution claims under the Fifteenth Amendment.  *See Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000) ("Even if § 5 did not have a different baseline than the Fifteenth Amendment, appellants' argument that § 5 should be read in parallel with the Fifteenth Amendment would fail for the simple reason that we have never held that vote dilution violates the Fifteenth Amendment.  Indeed, contrary to Justice Souter's assertion, we have never even 'suggested' as much.").  Plaintiffs' arguments to the contrary (and their reliance on cases that pre-date *Reno*) are not persuasive.

## IV.   The Court should not consider Plaintiffs' immaterial and inadmissible evidence.

Plaintiffs rely on news articles and social media posts to suggest that the *City of Pearland* has a history of racism.  Specifically, Plaintiffs point to statements allegedly made by mayor

Kevin Cole and councilmember Woody Owens. [Dkt. No. 76, pp. 2–4]. These statements and news articles are immaterial to this case because the City of Pearland's mayor and councilmembers have nothing to do with Pearland ISD. As a matter of law, only the board of trustees controls the District. TEX. EDUC. CODE § 11.151(b) ("Except as otherwise provided . . . the trustees as a body corporate have the **exclusive power and duty** to govern and oversee the management of the public schools of the district.") (emphasis added); *see also Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Furthermore, any alleged discriminatory animus by the city's mayor and councilmembers has nothing to do with the *District's* decision to maintain its at-large election system, and is entirely irrelevant to the issues int his case. *Veasey v. Abbott*, 830 F.3d 216, 230 (5th Cir. 2016) (holding that "awareness of a disparate impact on a protected group is not enough;" instead, a voting rights plaintiff must show that the challenged election system was enacted or maintained "because of that disparate impact"); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 26, 279 (1979) (holding that discriminatory purpose "implies more than intent as volition or intent as awareness of consequences;" instead, "[i]t implies that the **decisionmaker** [] selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group") (emphasis added). And, even if these news articles and social media posts were relevant to the claims and defenses at issue in this case, they are inadmissible hearsay. *See Huddleston v. Fed. Bureau of Investigation*, 2024 WL 3834383, at *3 (E.D. Tex. Aug. 15, 2024) ("Huddleston's news articles are inadmissible hearsay as statements 'the declarant[s] do[ ] not make while testifying at the current trial or hearing' and that are 'offer[ed] in[to] evidence to prove the truth of the matter asserted in the statement.'") (citing FED. R. EVID. 801; *Roberts v. City of Shreveport*, 397

F.3d 287, 295 (5th Cir. 2005) ("The plaintiffs provide only newspaper articles—classic, inadmissible hearsay.")). This hearsay objection applies to all of Plaintiffs' media sources. [Dkt. No. 76, pp. 2–6, 15, 19].

The District also objects to portions of Plaintiffs' supporting affidavits because they contain inadmissible statements. For example, in Joseph Say's affidavit, paragraphs 7, 15, and 16 are riddled with conclusory and speculative assertions, hearsay, and improper legal opinions. [Dkt. No. 76-3, ¶¶ 7,14,15,16]. Say cannot speak on behalf of the Board or other constituents, and he is not qualified to opine on whether the District's at-large election system has been maintained for a discriminatory purpose. FED. R. EVID. 401, 701, 801; *Gibson v. Liberty Mut. Group*, 129 Fed. App'x 94, 95 (5th Cir. 2005) ("The district court properly struck this portion of the affidavit because it contains legal conclusions and hearsay and was not based upon [plaintiff's] personal knowledge."); *Haglund v. St. Francis Episcopal Day Sch.*, 8 F. Supp. 3d 860, 871 (S.D. Tex. 2014) (sustaining objections that statements in a declaration were conclusory, speculative, irrelevant, and inadmissible legal opinions). Say's reference to media articles about alleged racism [*see* Dkt. No. 76-3, ¶ 12] also constitutes inadmissible hearsay. FED. R. EVID. 801.

Al Lloyd's affidavit likewise contains inadmissible statements. [*See* Dkt. No. 76-4, ¶¶ 10, 11, 14, 15, 18]. Lloyd cannot speak on behalf of the Board or other constituents, and he cannot speculate as to how the Board operates or opine on how the District's at-large system allegedly impacts minority students. FED. R. EVID. 401, 701, 801; *Gibson*, 129 Fed. App'x. at 95; *Haglund*, 8 F. Supp. 3d at 871.

The Court should strike Plaintiffs' inadmissible exhibits and other evidence.

**V.     The Court should deny Plaintiffs' request for more discovery because they failed to comply with Federal Rule of Civil Procedure 56(d).**

Federal Rule of Civil Procedure 56(d) gives the Court discretion to allow a nonmovant additional discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Beverly v. Wal-Mart Stores, Inc.*, 428 Fed. App'x. 449, 451 (5th Cir. 2011) (quoting FED. R. CIV. P. 56(d)).    To justify a continuance to obtain more discovery, the nonmovant must demonstrate "(1) why the movant needs additional discovery and (2) how the additional discovery will likely create a genuine issue of material fact."  *Ramirez v. Fiesta Mart, LLC*, 2023 WL 7389014, at *2 (N.D. Tex. Nov. 8, 2023) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534–35 (5th Cir. 1999)).  The nonmovant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."  *Id.* (citing *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).  "Rather, a request to stay summary judgment under Rule 56(d) must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.  *Id.* (internal citations and quotations omitted).  "The party requesting the additional discovery or extension also must show that relevant discovery has been diligently pursued."  *Id.*

As an initial matter, Plaintiffs do not attach an affidavit or declaration proving up their alleged need for more discovery.  This alone is fatal to their request.  *See* FED. R. CIV. P. 56(d).  But even if they had complied with this straightforward requirement, Plaintiffs' request for additional discovery still does not comply with Rule 56(d) because it is vague, and because Plaintiffs have not (and cannot) show that they exercised due diligence.  Indeed, Plaintiffs

merely claim that they *may* uncover evidence of the District's alleged underlying discriminatory purpose for utilizing the at-large voting system.  [Dkt. No. 76, p. 29].  They apparently believe this because of statements made by the City of Pearland's mayor and a city councilmember but, as detailed above, those alleged statements are immaterial to this lawsuit and do not change the fact that Plaintiffs' claims lack legal merit.

Additionally, Plaintiffs never disclosed the city councilmember or the mayor as individuals likely to have discoverable information, as required by Rule 26(a)(1)(A)(i).  And they certainly did not utilize diligent efforts to depose their unidentified fact witnesses, given that the only witnesses Plaintiffs ever attempted to depose before the close of discovery were Board members and a 30(b)(6) representative (for which they never provided topics).  [*See* Dkt. No. 54].[3]  Plaintiffs otherwise do not indicate what additional *specific* discovery they need, which is also fatal to their request.  *Raby*, 600 F.3d at 561.

Because Plaintiffs have not sufficiently demonstrated their need for additional discovery under Rule 56(d), the Court should deny Plaintiffs' request.  However, if the Court is inclined to allow more discovery, the District requests that the case be abated until *Petteway v. Galveston County, Texas* has been fully and finally resolved.

## CONCLUSION

The District has already expended significant time and resources on this case, and there is no basis for requiring taxpayers to continue footing the bill for meritless litigation and further discovery.  Summary judgment should be granted.

---

[3]Plaintiffs cannot use the Court's stay as an excuse for not obtaining discovery because Plaintiffs had from the inception of their lawsuit (November 4, 2022) to when the stay was implemented (January 30, 2024) to send out discovery and depose witnesses.

**THOMPSON & HORTON LLP**


By:   /s/ Stephanie A. Hamm
      Stephanie A. Hamm, Attorney in Charge
      State Bar No. 24069841
      shamm@thompsonhorton.com
      Lisa R. McBride
      State Bar No. 24026829
      lmcbride@thompsonhorton.com
      Alexa Gould
      State Bar No. 24109940
      agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-9611

**ATTORNEYS FOR PEARLAND ISD**


## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, a true and correct copy of the foregoing document was served on all counsel and pro se parties of record via the Court's CM/ECF system, as follows:

William A. Brewer III et al.
BREWER STOREFRONT, PLLC
1717 Main Street, Suite 5900
Dallas, Texas 75201

      /s/ Stephanie A. Hamm
      Stephanie A. Hamm

9